1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   ANTECH DIAGNOSTICS INC,                    CASE NO. C14-1735 MJP

11                         Plaintiff,           ORDER ON CROSS-MOTIONS FOR
                                                SUMMARY JUDGMENT
12            v.

13   CATHERINE GILBERTSON, DVM, et
     al.,
14
                          Defendants.
15

16

17       THIS MATTER comes before the Court on the Parties' cross-motions for summary

     judgment.  (Dkt. Nos.  23, 28, 30.)  Having considered the Parties' briefing and all related
18
     papers, the Court DENIES Defendants' motions to dismiss for lack of subject matter jurisdiction,
19
     GRANTS Plaintiff's motion that the contract was signed by Defendants in their individual
20
     capacities; GRANTS Plaintiff's motion that Defendants breached the contract; and GRANTS in
21
     part and DENIES in part the Parties' motions as to damages.
22
              /
23
              /
24

**Background**

Plaintiff Antech Diagnostics, Inc., a national provider of reference laboratory services, brings suit against Defendants Catherine Gilbertson, DVM, Danielle Cook, DVM, and the Cat Clinic, LLC, asserting claims for breach of contract, unjust enrichment, and quantum meruit. (Dkt. No. 1.)  Defendants Gilbertson and Cook have filed cross-claims against each other and the Cat Clinic, LLC, for, inter alia, breach of contract, indemnification, and fraud and misrepresentation.  (Dkt. Nos. 7, 15, 20.)

This suit stems from a five-year exclusive laboratory services contract (the "Agreement"), in which Defendants agreed to purchase a certain quantity of veterinary laboratory services from Plaintiff per year for five years in exchange for discounted pricing and a $20,000 loan, which would be forgiven in installments if Defendants met certain conditions. (Dkt. No. 2.)

Plaintiff alleges that Defendants breached several of the Agreement's provisions and now seeks to recover for damages resulting from those breaches.  (Dkt. No. 23.)  Specifically, Plaintiff argues that Defendants breached the Agreement by ceasing to purchase laboratory services two years into the Agreement's five-year term without having had purchased the minimum guaranteed purchase amount, and by failing to pay outstanding invoices within the time period required by the contract.  (Id.)

Defendants Gilbertson and Cook filed cross-motions for summary judgment, arguing that the Agreement was between Plaintiff and the Cat Clinic, LLC, and not between Plaintiff and Defendants Gilbertson and Cook, individually, and that Plaintiff's damages for breach of the contract are no more than $75,000.  (Dkt. Nos. 28, 30.)  Defendants argue that because Plaintiff's

damages fall below the amount in controversy threshold for diversity jurisdiction, Plaintiff's suit should be dismissed for lack of subject matter jurisdiction.  (Id.)

**Discussion**

I.   Legal Standard

    A.   Summary Judgment

Summary judgment is proper where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In assessing whether a party has met its burden, the underlying evidence must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

II.   Subject Matter Jurisdiction

Defendants move for summary judgment as to the maximum amount of damages recoverable by Plaintiff, arguing that this action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because it is a legal certainty that the maximum amount of damages falls beneath the amount in controversy threshold for diversity jurisdiction. (Dkt. Nos. 28 at 13-14, 30 at 10.)

28 U.S.C. § 1332 provides in relevant part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States." Generally, the amount in controversy is determined from the face of the pleadings, and the "sum claimed by the plaintiff controls so long as the claim is made in good faith." Crum v. Circus Circus Enterprises, 231 F.3d 1129, 1131 (9th Cir. 2000).  "To justify dismissal, it must appear to

1    a legal certainty that the claim is really for less than the jurisdictional amount." Id. (citing

2    Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997) (internal

3    quotation marks omitted)).

4          A "legal certainty" exists "when a rule of law or limitation of damages would make it

5    virtually impossible for a plaintiff to meet the amount-in-controversy requirement." Pachinger v.

6    MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 364 (9th Cir. 1986). "Only three situations

7    clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's

8    possible recovery; 2) when a specific rule of law or measure of damages limits the amount of

9    damages recoverable; and 3) when independent facts show that the amount of damages was

10   claimed merely to obtain federal court jurisdiction." Id. (quoting 14A Charles Alan Wright,

11   Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3702 at 48–50 (2d ed.

12   1985)).

13         Here, Defendants Gilbertson and Cook argue the legal certainty standard is met because

14   although Plaintiff's complaint alleges damages of over $130,000, the terms of the Agreement

15   limit Plaintiff's possible recovery through the contract's "inherent cap on damages." (Dkt. Nos.

16   28 at 13-14, 44 at 8, 45.)  The Court disagrees.  The contract does not contain a cap on damages

17   below the jurisdictional threshold, and it is not otherwise "virtually impossible" for Plaintiff to

18   meet the $75,000 requirement.  (See Dkt. No. 2 at 1-5.)  While Defendants calculate Plaintiff's

19   damages as less than $75,000, their calculations rely on their interpretation of the contract and

20   the surrounding facts.  The Court finds that Plaintiff has made a good faith claim for damages

21   exceeding the jurisdictional threshold and that 28 U.S.C. § 1332's amount in controversy

22   requirement has been met.  Defendants' motions for dismissal for lack of subject matter

23   jurisdiction are DENIED.

24

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT- 4

1       III.    Parties to the Contract

2       The Parties next dispute whether Defendants Gilbertson and Cook entered into the

3 Agreement with Plaintiff in their individual capacities or in their representative capacities as

4 agents of the Cat Clinic, LLC.  (Dkt. Nos. 23 at 7-11, 30 at 10-19, 33.)

5       Under California law, "the intention of the parties as expressed in the contract is the

6 source of contractual rights and duties.  A court must ascertain and give effect to this intention by

7 determining what the parties meant by the words they used."  <u>Pac. Gas & Elec. Co. v. G. W.</u>

8 <u>Thomas Drayage & Rigging Co.</u>, 69 Cal.2d 33, 38 (1968).  Where the parties disagree about the

9 meaning of the contract, courts construe the contract using a two step process.  "First, the Court

10 must determine whether the contract is 'ambiguous.'  Whether the contract is 'ambiguous' is a

11 question of law."  <u>Smith v. Simmons</u>, 638 F. Supp. 2d 1180, 1193 (E.D. Cal. 2009) (citing <u>ASP</u>

12 <u>Properties Group v. Fard, Inc.</u>, 133 Cal. App. 4th 1257, 1266 (2005)).  "If the language of the

13 contract cannot reasonably be construed as a party suggests then the Court will find that the

14 contract is not 'ambiguous' and the inquiry is over.  If, on the other hand, the Court finds that the

15 contract is 'reasonably susceptible to either of the meanings urged by the parties' then the Court

16 'moves on to the second step which is to determine just what the parties intended the contract

17 term to mean.'" <u>Id.</u> (citation omitted).

18       In the second step, the Court admits extrinsic evidence, if any, proffered by each party to

19 aid in interpreting the contract.  <u>Id.</u>  If the parties submit no extrinsic evidence, or if the material

20 extrinsic evidence is not in conflict, the Court's construction of the contract is purely a question

21 of law.  <u>Id.</u>  If, however, the evidence presents a genuine issue of material fact, that fact issue

22 must be resolved by a jury before the Court can interpret the contract.  <u>Id.</u>

23

24

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT- 5

1    A contract provision is ambiguous when it is capable of two or more constructions, both

2    of which are reasonable.  Id. (citing Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins.

3    Co., 5 Cal.4th 854, 867 (1993)).  Courts will not adopt a strained or absurd interpretation in order

4    to create an ambiguity where none exists.  Id.  Language in a contract must be construed in the

5    context of that instrument as a whole, and in the circumstances of the case, and cannot be found

6    to be ambiguous in the abstract.  Id.

7    Plaintiff argues that the Agreement is unambiguous and reasonably susceptible to only

8    one interpretation: the Agreement was entered into by Gilbertson and Cook, individually.  (Dkt.

9    Nos. 23 at 7-11, 46 at 2-8.)  Therefore, Plaintiff argues, extrinsic evidence is inadmissible and

10   cannot be used to create ambiguity where none exists.  (Id.)  Defendants argue that the contract is

11   ambiguous as to whether Gilbertson and Cook signed as agents of the Cat Clinic, LLC, or in

12   their individual capacities.  (Dkt. Nos. 30 at 10-18, 33 at 1-2, 38 at 2-5, 41 at 1-2.)  Defendants

13   argue that extrinsic evidence must be admitted to interpret the contract, and that a genuine issue

14   of material fact created by the extrinsic evidence forecloses summary judgment on this issue.

15   (Id.)

16   The Court finds that the contract is unambiguous.  The contract clearly states that the

17   agreement "is entered into by and between Antech Diagnostics ('Antech') and the party or

18   parties listed below as 'Animal Hospital Owner(s)' as of the Effective Date (defined below)."

19   (Dkt. No. 2 at 1.)  The contract identifies the "Animal Hospital(s)" as the Gene Poole Memorial

20   Cat Clinic and the "Owner(s)" as "Dr. Cay Gilbertson, DVM & Dr. Danielle Cook, DVM."  (Id.)

21   Defendants Gilbertson and Cook signed the contract with their names only, without indication

22   that they did so in a representative capacity.  (Id. at 4.)  There is no mention anywhere in the

23   contract of the Cat Clinic, LLC, or of any agency relationship.  The Court finds that the contract

24

1   is not reasonably susceptible to the interpretation that Doctors Gilbertson and Cook are not

2   parties to the contract and the only true parties are Antech and the Cat Clinic, LLC.  Because the

3   Court finds the contract unambiguous on this issue, extrinsic evidence regarding Defendants'

4   understanding of the contract is not properly considered.  See Smith, 638 F. Supp. 2d at 1193.

5        The Court concludes that the contract was entered into by Gilbertson and Cook in their

6   individual capacities, and therefore GRANTS Plaintiff's motion for summary judgment and

7   DENIES Defendants' motions for summary judgment on this issue.

8        IV.     Beach of Contract and Damages

9        Plaintiff argues it is uncontested that Defendants breached the Agreement by failing to

10  make timely payments for laboratory services after receiving Antech invoices and by ceasing to

11  use Antech services two years into a five-year contract term.  (Dkt. No. 23 at 1-6, 11.)

12  Defendants request that the Court deny Plaintiff's motion in full and argue that Defendants are

13  entitled to summary judgment limiting Plaintiff's damages; Defendants do not, however, dispute

14  that they breached the contract's requirement that invoices be paid in full within twenty days of

15  receipt or the requirement that Defendants purchase at least $24,000 in services per year for a

16  period of five years.  (Dkt. Nos. 28 at 6-8, 30 at 8-10, 33 at 1.)  Accordingly, the Court finds that

17  Defendants breached the Agreement, GRANTS Plaintiff's motion for summary judgment on the

18  issue of breach, and turns to the issue of damages.

19            A.     Loan Repayment

20       Plaintiff argues it is undisputed that because Defendants never complied with their

21  contractual obligation to pay invoices in full within twenty days of receipt, they are not entitled

22  to any loan forgiveness under the terms of the Agreement.  (Dkt. No. 23 at 3-6, 12.)  Defendants

23  argue that they are entitled to at least two years of loan forgiveness because they met the $24,000

24

1  minimum annual purchase requirement for the first two years of the contract's term.  (Dkt. Nos.

2  28 at 7-8, 30 at 8-10.)

3       The Agreement provides that, as an incentive for Defendants to enter into a five-year

4  exclusive services contract with Antech, Antech would loan Defendants $20,000.  (Dkt. No. 2 at

5  1.)  The loan was to be repaid by Defendants in annual installments of $4,000 plus interest

6  accrued at 6% per year, unless Defendants satisfied the Agreement's requirements for loan

7  forgiveness for that period as set out in section 3.2 of the Agreement.  (Id. at 2.)  In order for any

8  given year's loan repayment installment to be forgiven, Defendants had to have purchased at

9  least $24,000 in services in that year, had to have abided by the Agreement's exclusivity

10  provisions, and had to have paid invoices "in a timely manner."  (Id. at 2-3.)  Section 2 of the

11  Agreement provides that payment "in full for Laboratory Services shall be made within twenty

12  (20) days after receipt of an Antech invoice."  (Id. at 2.)

13       It is undisputed that Defendants purchased more than $24,000 in services for the first two

14  years of the contract's term.  (See Dkt. Nos. 23, 28, 30.)  It is also undisputed that Defendants

15  did not pay all invoices in full within twenty days of receipt during any year of the contract's

16  term.  (Dkt. No. 43 at 5.)  Nevertheless, Antech sent Defendants a Form 1099-MISC for debt

17  forgiveness in the amount of $4,000 to cover the 2012 annual loan repayment installment.  (Dkt.

18  No. 23 at 6.)

19       The Court concludes that Defendants are not entitled to any loan forgiveness under the

20  terms of the Agreement, except for the $4,000 already forgiven by Plaintiff.  Defendants failed to

21  pay invoices within twenty days of receipt, as is required under section 2 of the Agreement;

22  timely payment of invoices is a prerequisite to loan forgiveness under section 3.2 of the

23  Agreement.  Defendants' argument that thirty days notice and an opportunity to cure is required

24

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT- 8

1   under section 3.3 before Antech can declare a loan default is unavailing: section 3.3 is an

2   acceleration clause which provides that the entire amount of the loan will become due and owing

3   if Antech declares a loan default, except for amounts previously forgiven.  (Dkt. No. 2 at 3.)

4   Section 3.2, not section 3.3, sets out the requirements for loan forgiveness, and the Agreement

5   does not require Antech to forgive loan repayment installments for every year in which it does

6   not declare a loan default.

7          Accordingly, the Court GRANTS Plaintiff's motion as to the amount owed for the loan

8   and finds that Defendants are required to repay $16,000 of the loan plus interest in the amount of

9   6% per year, as provided in the Agreement.

10            B.     Damages for Breach of Contract

11          Plaintiff argues it is entitled to lost profits damages in the amount of $84,998.57, a figure

12   arrived at by looking at the revenue received by Plaintiff from Defendants during the first years

13   of the contract's term, calculating an annual increase in the revenue expected to be generated

14   through the Agreement with Defendants for the remaining years in the contract's term, and then

15   subtracting the amounts already paid by Defendants and the amount that would have been used

16   to cover Antech's variable costs.  (Dkt. No. 23 at 12-14.)  Defendants argue that Plaintiff's

17   damages are $14,859.69, a figure arrived at by taking the contract's minimum obligation of

18   $120,000 in purchases and subtracting the amounts already paid to Plaintiff and the amount

19   owed in unpaid invoices.  (Dkt. Nos. 28 at 7-13, 30 at 9-10.)

20          The Court finds that Plaintiff is entitled to $40,467.56, plus pre-judgment interest, in

21   damages for Defendants' breach of the Agreement.  The minimum guaranteed obligation under

22   the contract is $120,000 over the five-year term.  (Dkt. No. 2 at 1.)  The Court finds that

23   $120,000 represents Plaintiff's expectation interest, or the benefit of the bargain that full

24

1    performance by Defendants would have brought under the Agreement.  See <u>New West Charter</u>

2    <u>Middle Sch. v. Los Angeles Unified Sch. Dist.</u>, 187 Cal. App. 4th 831, 844 (2010).  The Parties

3    agree that Defendants have already paid $79,532.44 to Plaintiff under the Agreement.  (Dkt. Nos.

4    28 at 11, 30 at 9, 42 at 3.)  Accordingly, Plaintiff's damages are $120,000 in expected revenue

5    minus $79,532.44 for amounts already paid, resulting in total damages owed of $40,467.56 plus

6    pre-judgment interest.

7                                            **Conclusion**

8          The Court finds that 28 U.S.C. § 1332's amount in controversy requirement is met, and

9    therefore DENIES Defendants' motions to dismiss for lack of subject matter jurisdiction.  The

10   Court finds that Defendants Gilbertson and Cook signed the Agreement with Plaintiff in their

11   individual capacities, and therefore GRANTS Plaintiff's motion and DENIES Defendants'

12   motions on this issue.  The Court concludes that Defendants are not entitled to loan forgiveness

13   under the terms of the Agreement because they failed to timely pay Antech's invoices, and

14   therefore GRANTS Plaintiff's motion as to loan forgiveness.  Finally, the Court GRANTS

15   Defendants' motions as to Plaintiff's damages with some modification.  The Court finds that

16   Plaintiff is entitled to $16,000, plus interest at 6% per year, as well as $40,467.56, plus pre-

17   judgment interest, in total damages.

18

19         The clerk is ordered to provide copies of this order to all counsel.

20

21         Dated this 19th day of November, 2015.

22

23

24                                          Marsha J. Pechman
                                            Chief United States District Judge